IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02679-BNB

DANIEL VIGIL,

    Plaintiff,

v.

EXECUTIVE DIRECTOR,
RAE TIMME,
FREDRIC GIFFORD,
MARY ANN ALDRICH,
LANCE MIKLICH,
VALARIE CRAIG,
KEN TOPLISS,
LEONARD VIGIL,
CODY McKIBBEN,
MARK SCHERER,
COLORADO DEPARTMENT OF CORRECTIONS, and
COLORADO TERRITORIAL CORRECTIONAL FACILITY,

    Defendants.

## ORDER OF DISMISSAL

    Plaintiff, Daniel Vigil, is a prisoner in the custody of the Colorado Department of Corrections (DOC) at the Colorado Territorial Correctional Facility (CTCF) in Cañon City, Colorado.  Mr. Vigil initiated this action by filing *pro se* a Prisoner Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 claiming that his constitutional rights have been violated.  On October 9, 2013, Magistrate Judge Boyd N. Boland entered an order directing Mr. Vigil to file an amended complaint that clarifies the claims he is asserting.  On October 25, 2013, Mr. Vigil filed an amended Prisoner Complaint (ECF No. 6).  He seeks damages as well as declaratory and injunctive relief.

The Court must review Mr. Vigil's claims in the amended Prisoner Complaint because he is a prisoner and he is seeking redress from officers or employees of a governmental entity. *See* 28 U.S.C. § 1915A. Pursuant to § 1915A(b)(1), the Court is required to dismiss the amended Prisoner Complaint, or any portion of the amended Prisoner Complaint, that is frivolous. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989). For the reasons stated below, the Court will dismiss the action as legally frivolous.

The Court must construe the amended Prisoner Complaint liberally because Mr. Vigil is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the amended Prisoner Complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a *pro se* litigant. *See id.*

Mr. Vigil's allegations in the amended Prisoner Complaint relate primarily to two prison disciplinary proceedings and his placement on restricted privileges status. According to Mr. Vigil, he was terminated from his prison job on March 22, 2013, for unauthorized possession, and he was charged with a disciplinary offense by Defendant Valarie Craig on March 27, 2013. Mr. Vigil further alleges that he was found guilty of the disciplinary offense by Defendant Ken Topliss at a hearing on April 2, 2013; he was sanctioned with twenty days loss of privileges and twenty days loss of earned time as a

result of the disciplinary conviction; the disciplinary conviction was reviewed and approved by Defendant Fredric Gifford on April 5, 2013; and Defendant Mary Ann Aldrich failed to respond to his administrative appeal from the disciplinary conviction. Mr. Vigil contends that his termination from his prison job also resulted in his being placed on restricted privileges status by Defendant Leonard Vigil on March 27, 2013. Finally, Mr. Vigil asserts that the decision to place him on restricted privileges status was upheld on appeal by Defendant Lance Miklich.

The events surrounding the second disciplinary proceeding occurred in May and June 2013. According to Mr. Vigil, he was charged with disobeying a lawful order for brushing his teeth by Defendant Mark Scherer on May 23, 2013; he received a notice of charges on June 3, 2013; the disciplinary case against him was prosecuted by Defendant Valarie Craig; he was found guilty by Defendant Ken Topliss at a hearing on June 7, 2013; he again was sanctioned with twenty days loss of privileges and twenty days loss of earned time; the disciplinary conviction was reviewed by Defendant Fredric Gifford; and the disciplinary conviction was affirmed on appeal by Defendant Mary Ann Aldrich on June 25, 2013.

Construing the amended Prisoner Complaint liberally, Mr. Vigil apparently claims that he was denied due process in connection with both disciplinary proceedings. Mr. Vigil also claims that he was subjected to double jeopardy when he was placed on restricted privileges status because the same evidence was used to convict him of a disciplinary hearing; he was denied due process because he was placed on restricted privileges status without a hearing and in violation of DOC administrative regulations; and he was denied equal protection because restricted privileges status is not applied to

3

all offenders equally.

The Court notes initially that any claims Mr. Vigil may be asserting against Defendants Rick Raemisch, the DOC executive director, and Rae Timme, the CTCF warden, are legally frivolous and must be dismissed because he fails to allege facts demonstrating that either of these Defendants personally participated in the asserted constitutional violations. *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) (noting that "personal participation in the specific constitutional violation complained of is essential"). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997); *see also Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability). As a result, a defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Dodds v. Richardson*, 614 F.3d 1185, 1198-99 (10th Cir. 2010).

Mr. Vigil was advised in the order directing him to file an amended complaint that he must include allegations of personal participation by each Defendant. Despite this warning, Mr. Vigil alleges in the amended Prisoner Complaint with respect to Defendants Raemisch and Timme only that they are "responsible for implementing all policies and procedures" and that they were "made aware of the problems, [were] in a position of authority to correct them[,] and failed to take the reasonable steps necessary to do so." (ECF No. 6 at 1.) These vague and conclusory allegations are not sufficient to demonstrate that either of these Defendants personally participated in the asserted constitutional violations. Therefore, Defendants Raemisch and Timme will be dismissed

as parties to this action for lack of personal participation.

The Court also will dismiss the DOC and the CTCF as parties to this action because Mr. Vigil does not assert any claims against those Defendants. In addition, even if the Court assumes the CTCF is an entity subject to suit, both the CTCF and the DOC would be protected by Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

The Court next will address Mr. Vigil's due process claims challenging the disciplinary convictions. The threshold issue is whether Mr. Vigil alleges facts that implicate a constitutionally protected liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). A liberty interest protected by due process may arise under the Due Process Clause itself or state law. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

It is clear that Mr. Vigil's disciplinary convictions do not implicate a liberty interest that arises under the Due Process Clause itself because prisoners are not entitled to any particular degree of liberty. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). In short, the Due Process Clause does not protect every change in the conditions of confinement that has a substantial adverse impact on the prisoner. *See Meachum*, 427 U.S. at 224. Therefore, the only pertinent question is whether the disciplinary convictions implicate a protected liberty interest that arises under state law. "For inmates being punished for misconduct, a liberty interest exists only when the penalty lengthens the confinement or involves an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Meek v. Jordan*, – F. App'x –, 2013 WL 4427200 at *2 (10th Cir.

Aug. 20, 2013) (quoting *Sandin*, 515 U.S. at 484).  Relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include whether the conditions relate to and further a legitimate penological interest, whether the conditions are extreme, whether the conditions increases the duration of confinement, and whether the conditions are indeterminate.  *See DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).  A prisoner is not entitled to any procedural protections in the absence of a grievous loss.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

If the punishment imposed as a result of a prison disciplinary conviction does implicate a constitutionally protected liberty interest,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).  In addition, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record."  *Id.* (internal citation and quotation marks omitted).  Finally, "[a]n impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context."  *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal quotation marks omitted).

Mr. Vigil alleges that he was sanctioned in each disciplinary case with loss of privileges for twenty days and the loss of twenty days of earned time credit.  The fact

that Mr. Vigil lost privileges for a short period of time did not lengthen his sentence or otherwise subject him to any atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Sandin*, 515 U.S. at 486 (holding that thirty days in disciplinary segregation did not implicate a protected liberty interest); *Meek*, – F. App'x –, 2013 WL 4427200 at **2-3 (finding that sixty days in punitive segregation as a disciplinary sanction did not implicate a protected liberty interest).

The Court also finds that the loss of earned time credits as a disciplinary sanction does not implicate a constitutionally protected liberty interest.  According to the Offender Search function on the DOC website, Daniel Vigil, DOC #93676, is serving a sentence of eighteen months in prison following his conviction in a 2012 case in the Jefferson County District Court and he has been eligible for discretionary parole since February 18, 2013.  The fact that Mr. Vigil is not entitled to mandatory parole on his parole eligibility date is significant and means that the loss of earned time credits does not implicate a constitutionally protected liberty interest.  For Colorado inmates subject to discretionary parole, earned time credits do not constitute service of a prisoner's sentence and are used solely to determine the date on which he will be eligible for parole.  *See Meyers v. Price*, 842 P.2d 229, 231-32 (Colo. 1992); *see also Kailey v. Price*, 497 F. App'x 835, 836 n.3 (10th Cir. 2012) (stating that "Colorado case law is clear that earned time credit does not decrease the actual sentence imposed but only establishes an inmate's parole eligibility date.").  Thus, any impact on Mr. Vigil's parole eligibility date caused by the loss of earned time credits did not impose an atypical and significant hardship.  The loss of earned time credits also did not inevitably affect the length of his confinement because the decision to release an inmate on parole "rests on

a myriad of considerations." *Sandin*, 515 U.S. at 487.

In any event, the Court finds that Mr. Vigil's due process claims challenging the disciplinary proceedings are legally frivolous even if a constitutionally protected liberty interest was implicated because he fails to allege that he was denied any of the process required under *Wolff*. Mr. Vigil does allege that he received a copy of the notice of charges with respect to the March 2013 incident later than allowed under the relevant DOC administrative regulation, but that allegation does not support a constitutional due process claim. "*Wolff* requires that the accused in a prison-disciplinary action be given written notice of the charges no less than 24 hours before a hearing on those charges. It sets no time limit for providing notice of charges after an incident." *Dedrick v. Daniels*, 386 F. App'x 810, 811 (10th Cir. 2010). Mr. Vigil concedes that he received the notice of charges more than twenty-four hours before the disciplinary hearing on April 2, 2013. As a result, the advance notice requirement under *Wolff* was satisfied. Furthermore, even if the relevant DOC administrative regulation was violated, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993); *see also Dedrick*, 386 F. App'x at 811.

The Court next finds that Mr. Vigil's double jeopardy claim, in which he contends that the same evidence was used both to convict him of a disciplinary violation and justify his placement on restricted privileges status, is legally frivolous and must be dismissed. "Because the Double Jeopardy clause only applies to proceedings that are essentially criminal in nature, it is well established that prison disciplinary sanctions . . . do not implicate double jeopardy protections." *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (internal quotation marks and citations omitted).

The Court next will address Mr. Vigil's due process claim challenging his placement on restricted privileges status. Like the due process claims discussed above, this due process claim also depends upon the existence of a constitutionally protected liberty interest because Mr. Vigil was not deprived of life or property as a result of his placement on restricted privileges. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (stating that the Constitution guarantees due process only when a person is to be deprived of life, liberty, or property).

Mr. Vigil's placement on restricted privileges did not implicate a liberty interest that arises under the Due Process Clause itself because prisoners are not entitled to any particular degree of liberty. *See Meachum*, 427 U.S. at 225; *Templeman*, 16 F.3d at 369. Therefore, the pertinent question again is whether Mr. Vigil's placement on restricted privileges status implicates a protected liberty interest under state law. Stated another way, the Court must consider whether the conditions Mr. Vigil was subjected to while on restricted privileges status imposed atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484, 487. As noted above, relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include whether the conditions relate to and further a legitimate penological interest, whether the conditions are extreme, whether the conditions increases the duration of confinement, and whether the conditions are indeterminate. *See DiMarco*, 473 F.3d at 1342.

The Court finds that Mr. Vigil fails to demonstrate the existence of a constitutionally protected liberty interest that arises under state law because he fails to

allege facts that demonstrate his placement on restricted privileges imposed atypical and significant hardship in relation to the ordinary incidents of prison life. *See Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin*, 515 U.S. at 479-83, for the proposition "that nondisciplinary administrative segregation 'is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.'"). Therefore, the Court finds that Mr. Vigil was not deprived of a constitutionally protected liberty interest as a result of his placement on restricted privileges. As a result, this due process claim also is legally frivolous and must be dismissed.

The Court next will address Mr. Vigil's claim that he was denied equal protection because restricted privileges status is not applied to all offenders equally. A person's right to equal protection is violated when the government or its officials treat him or her differently than others who are similarly situated. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). The Court finds that Mr. Vigil's equal protection claim lacks merit and must be dismissed because he fails to allege specific facts that demonstrate he has been treated differently than any similarly situated inmates.

Mr. Vigil was advised in the order directing him to file an amended complaint that merely making vague and conclusory allegations that his federal constitutional rights have been violated does not entitle a *pro se* pleader to a day in court regardless of how liberally the court construes such pleadings. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992). "[I]n analyzing the sufficiency

of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall*, 935 F.2d at 1110.

Mr. Vigil also was advised that, for each claim he asserts, he must explain, clearly and concisely, "what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Finally, Mr. Vigil was advised that the general rule that *pro se* pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Despite Magistrate Judge Boland's explicit instructions, Mr. Vigil fails to allege specific facts in support of the equal protection claim. He makes no allegation that he has been treated differently than any similarly situated individual and he fails to link the equal protection claim to any particular Defendant. Therefore, the equal protection claim also will be dismissed as legally frivolous.

Finally, the Court notes that Mr. Vigil includes in the amended Prisoner Complaint allegations that he has been denied recreation time and that he

> was threatened, harassed[,] intimidated Mentally and verbally abused and written up wrongly by Cody McKibbin on May 15, 2013[,] and Marcia Clemons on May 26, 2013, this was also done by various other staff members on April 4[,] 2013, May 5, 2013[,] twice May 11, 2013, May 14, 2013[,] twice May 16, 2013[,] and May 24, 2013, where Plaintiff was given negative chronological entries which cause loss of earned time.

11

(ECF No. 6 at 4.)  Whatever claim or claims Mr. Vigil may intend to assert based on these allegations also will be dismissed as legally frivolous because the claims are vague.

For these reasons, all of Mr. Vigil's claims in the amended Prisoner Complaint will be dismissed as legally frivolous.  Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Plaintiff files a notice of appeal he also must pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.  Accordingly, it is

ORDERED that the Prisoner Complaint, the amended Prisoner Complaint, and the action are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

DATED at Denver, Colorado, this  19th  day of   November  , 2013.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court